And, uh, you know, the timing wasn't supposed to be 15 minutes, it's supposed to be 15 minutes at a time. And this one. May it please the court, I'm Lawrence Engel, counsel for the appellant, Manny Lincoln Neves. And what's presented to the court today is somewhat of a unique situation. The Neves case has been unique throughout. It's a surplus Chapter 11 estate of substantial size, probably one of the bigger individual surplus estates in this district, Western District of Washington. That's posed some conceptual problems throughout the administration of the case. As the court can see from the briefs, it's presented some significant issues concerning jurisdiction. It's the appellant's position that the district court erred in applying the appropriate principles for subject matter jurisdiction, particularly in the post-confirmation period. Essentially, the analysis was flawed in several respects. The first respect is that the wrong basis for subject matter jurisdiction was applied. The district court adhered to the appellee's analysis, which was exclusive jurisdiction over property of the estate. It's the appellant's view that that's the improper standard to apply here based upon the facts that are presented. We have a surplus estate. We have a situation where there's a confirmed plan. That confirmed plan provides for various rights of the parties. And based upon that confirmed plan, the standard for jurisdiction becomes more elastic and more restricted in terms of trying to determine what sorts of issues the bankruptcy court can determine. So it's our position that related to jurisdiction is the only proper basis for jurisdiction in the post-confirmation period. District court also made significant error in trying to apply surplus estate or surplus distribution principles from a Chapter 7 case. It just doesn't fit in the context of a surplus Chapter 11. Essentially, the district court looked at it from the standpoint, well, as in a 7, you've got the last tier of distribution going to the debtors. In this case, it's far from the reality. The reality is that the debtors, the nemesis, received a substantial distribution of property throughout this case at various times into the millions of dollars. And as the court can see from the record here, in relation to this distributional loan, initially by the appellee's admissions, were to receive at a minimum $4.3 million. So it's not a situation where in the typical, what I would call static Chapter 7 administration, you've got property being distributed at the end to the debtors if all the other creditors are paid. From the outset, in this case, all creditors are going to be paid. It's just a question of which assets are going to be paid from. So there's a clear distinction there and a significant flaw in the district court's analysis. I guess what I don't understand about your jurisdiction argument, I agree that what you just said, but it's what assets are going to be paid from. But all the assets get marshaled by the estate, don't they? That's correct, Your Honor, except for one thing. They do get marshaled by the estate, but that estate was extinguished on confirmation of the plan. It was replaced by a trust, and my client, Mr. Nevis, was a beneficiary of that trust. And what we have here essentially is a situation where you've got the appellees, who are the managers essentially of the LLC that was formed when the sale took place. Those managers were seeking a determination of where the money went, but more importantly, they were trying to get legal rulings on accounting and legal issues by the bankruptcy court on issues that only affected my client and his spouse. They only affected the debtors, and the reason they only affected the debtors is because the appellee knew and the court knew going into that hearing based upon the pleadings submitted by trustees' counsel and the further statements made by trustees' counsel on the record in three separate hearings that all the estate needed to be made whole and to deal with distribution of creditors was $4 million. And as it turns out, even though it's not necessarily in the record in detail, it's in a footnote in the reply brief, they needed less than that because other distributions were made to the debtors along the way. That may be so, but I don't know that it means that. I mean, I can imagine lots of bankruptcies where the bankruptcy court has jurisdiction over actions of a trustee that in the end affect only their debtor. But the estate's in bankruptcy, and so the bankruptcy goes ahead and makes the thing, and you're saying, all right, the estate isn't in bankruptcy anymore, but it's got a continuing trust that's still there. There is a continuing trust, Your Honor. And, yeah, maybe the trust doesn't have to keep all the money because there's no point in paying a bond on $12 million when you only need to keep four. I don't know that the fact that they can make an early distribution to the debtor or a non-timely distribution necessarily sort of provides a bankruptcy court a jurisdiction over that. I believe it does, Your Honor, when you look at the nature of the issues that were being presented and who they affected. I think you basically need to look at this from the standpoint of standing analysis. Who had a stake in those determinations? Who had a stake in the engineering fees, whether they be charged or not? Who had a stake in the preferred call? Who had a stake in the escrow and other charges? The only parties that were affected by those determinations were the debtors, who were the recipients of what we call and what's in the record as a surplus estate. So I suppose that you consider and have a static analysis of jurisdiction and say, well, it's only going to be a situation where it becomes probably a state at the beginning and remains there until there's a distribution, but I think that is divorcing from reality as far as what happened in this case and what happened during the course of this hearing. Look at the remarks made by Judge Overstreet on the record concerning what she thought her obligation was to have issues determined under the forum selection clause with regard to the rights between the member on one side and the manager on the other. It's very clear that she was mindful of that. Unfortunately, she didn't implement it. She exceeded her authority, exceeded her jurisdiction by making those determinations. She should not have done that based upon related to jurisdiction in the concepts there, because essentially you're looking at a situation conceptually where you have a pre-confirmation situation  That's the broad end of the funnel. There's more areas where bankruptcy jurisdiction exists to deal with numerous issues that affect the estate. As the estate gets administered, the plans confirm that rights are determined, you're at the bottom end of the funnel. I think the best example of that is the Zonix case, which the district court tried to distinguish. This case is really very similar to Zonix in a number of respects. The trustee had no interest in all these other issues. He deferred to my client and myself at the hearing in terms of trying to deal with them. So we're in a situation where related to jurisdiction, you have to look at the outcome of the proceeding and how it affects the bottom line. That is what creditors are going to get paid.  Judge Overstreet should have followed the, and the district court should have also reversed, with regard to what the jurisdictional basis was. It's not exclusive jurisdiction over property of the estate. It's related to jurisdiction. It only could be once you have a confirmed plan.  So the other thing I think that's significant in looking at all of this has to do with the nature of the sale and the sale order. The sale order specifically provides that the minority interest would remain property of the estate, but it also said it was subject to the operating agreement. That operating agreement contained a form selection clause. So essentially the appellee here violated the terms of the agreement by bringing this motion together here in bankruptcy court to deal with the accounting legal issues presented. It should have been brought in Nevada. They should have gotten a determination of who the money should be paid to, the $4 million, the $8.3 million, whatever, in terms of broad strokes. And then it should have gone down and they should have filed the form selection clause. Judge Overstreet remarked on the record that it was at a stake we had that in there. Well, it's res judicata. It's binding on the parties, and it should have controlled what the court did in this instance, Your Honor. So in terms of jurisdiction, I think it's related to jurisdiction. If you go down all the elements that are related to jurisdiction in terms of what you're dealing with, you've got a third-party dispute here between the manager and the member, and that's where the jurisdictional problem lies. There is no jurisdiction. Jurisdiction in federal courts, as the panel is very familiar with, is limited by statute. Now, the appellees argue that, well, you know, we've got provisions in the confirmation order and provisions in the plan, all that. That's all well and good, except the case law says jurisdiction is determined by the statutory provisions, and the only one remaining in the post-confirmation period is related to jurisdiction. All those determinations came off the bottom line of what the total amount of distribution would be to the debtors here, the appellant. It didn't affect what creditors would get. Given that situation, you basically had Judge Overstreet being overzealous in trying to resolve an issue, and she really didn't have jurisdiction to do that. So that's what the jurisdictional argument is about. I'll reserve the rest for rebuttal. Thank you. Good morning. May it please the Court, my name is Jim Day. I represent the respondents in this case. First, I would like to apologize for the quality of my voice. I have a bit of a cold. I represent the respondents, which I'll refer to from time to time as Great American, with the Court's indulgence. As the Court knows, really the meat and potatoes, for lack of a better analogy of this case, is subject matter jurisdiction. So I'll confine my arguments this morning to that set of issues. Because only if this Court determines that there's no basis for bankruptcy court jurisdiction, that argument and the appeal on that basis must fail. To be rigorous about this, we start when the case was commenced. When the case was commenced, one of the assets that Mr. Nevis, through an entity, had was a 320-unit apartment complex down in Nevada. When the case was filed, that was property of the estate. And U.S.C. 1334E tells us that the district court, and by reference, the bankruptcy court, had exclusive, original and exclusive jurisdiction over that property. Then we fast forward to August of 2004. That was when the transaction occurred, whereby my client created a new entity that acquired that property in exchange for which the bankruptcy estate received $6 million of cash and the minority interests in that LLC, Avalon, Nevada. The order which approved that transaction specifically provided that those minority interests, while nominally being in Mr. Nevis's name, would remain property of the estate and would be subject to the exclusive jurisdiction of the bankruptcy court. That's August of 2004. I think it was March 2005. We've had a Chapter 11 trustee for many, many months at this point. The trustee confirmed a plan of reorganization. That plan caused the bankruptcy estate to be replaced by a liquidating trust. The Chapter 11 trustee became the liquidating trustee. All the assets of the bankruptcy estate were transferred to that liquidating trust, and both the confirmed plan and the order confirming the plan made clear that the liquidating trust and its assets remained under the exclusive jurisdiction of the bankruptcy court.  I agree with the general proposition that parties cannot contract for subject matter jurisdiction. That is true as a general statement. What we were doing here, what was done here by the trustee, rather, was the retention of existing jurisdiction that was statutorily based going forward. Now, Mr. Engel indicated that when the estate dissolved, the court lost jurisdiction. There is nothing that I'm aware of, and there's certainly nothing in the record, which says that when a plan is confirmed, the bankruptcy court loses jurisdiction. In fact, that isn't the case. And the court's own prior rulings in the Hillis Motors case, for one, implicitly approve of retention of jurisdiction provisions in plans for special cases like this, which were very litigious. And the bankruptcy court, I think, wisely retained jurisdiction so there would be one court with a continuity of knowledge to be able to address these things. But as of March 2005, we now have a liquidating trust over which the court has exclusive jurisdiction. Now we go to December 2005. My client, through its own efforts exclusively, had converted that property into a condominium project and sold it for $48 million. After paying off the underlying mortgage and paying off expenses, there was a total of about $8.3 million that would, by our accounting, that would have been distributable to the liquidating trust. So we filed a motion in the only court in the land that had jurisdiction to hear the motion, the court with exclusive jurisdiction over that asset, those minority interests on which this distribution was going to be made. We filed our motion. We saw it short in time so we could get the money to Mr. Nevis quicker. They objected. The motion was denied. We had three hearings between January and March of 2006, multiple opportunities to present evidence. There is no conflicting evidence. The only evidence in the record is evidence that my client put on in support of the accounting. At the last minute, Mr. Nevis withdrew all of his objections, and the order was entered approving the accounting, approving the distribution, and that's where we are today. I would say that at the very, as I've just indicated, I think that the proper interpretation of all of this is simply that the bankruptcy court had original and exclusive jurisdiction based on statute at the beginning, and it never relinquished it going forward up until the time, up until and through the time, that it entered its order in March of 2006, and we distributed the funds. Mr. Engel's comments that that didn't exist and the only basis is related to we believe is incorrect, but let's stop there for a moment. First, let's be clear that we're not talking about an issue where my client and Mr. Nevis got into a post-confirmation fender bender that has absolutely nothing to do with the plan. Distributing $8.3 million to the liquidating trust seems to have a fairly close nexus to the success of that plan. But if we go back and look at the history of related to jurisdiction within this circuit, this court about 20 years ago adopted the Third Circuit's formulation in PACCOR. The parties agree on that, and that articulation is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. And plainly, the distribution of $8.3 million on an estate asset or liquidating trust asset plainly will conceivably have some effect on the administration of the bankruptcy. Now, it has only been two years ago that this court adopted the Third Circuit's reasoning in the post-confirmation context when it adopted the Third Circuit's reasoning in the Resorts International case. In that case, that court recognized that in cases involving continuing trusts, such as we have here, litigation trusts, or as here, liquidating trusts, trusts by their nature maintain a connection to the bankruptcy even after a plan has been confirmed. And this is quoting the Ninth Circuit's adoption of Resorts International. The court ultimately concluded that matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. I don't think it can be reasonably challenged, and this is the Pegasus Gold case, that with the commonality of facts from a case that this court specifically adopted only two years ago, that we have anything other than at a very minimum related to jurisdiction, or the bankruptcy court did when it entered its order in March of 2006. So even if we didn't have 1334E, even if we didn't have the reservation of jurisdiction going forward, even if none of those elements were present, it is abundantly clear that we have related to jurisdiction based upon very recent authority from this court. Let me briefly address the comments about the forum selection clause. First of all, it is not properly, that set of issues isn't properly before this court. It was not briefed before the district court. It was not preserved as an issue for this court, and it was not briefed for this court until the reply brief, to which we have obviously not had any procedural right to respond. So to the extent that that has been presented by way of reply, we don't believe it's properly before the court. But the simple answer is that given the bankruptcy court's exclusive statutorily based jurisdiction over the liquidating trust at the time of the hearings in early 2006 on this matter, it was clearly a mistake to approve a 40-page operating agreement that contained a boilerplate forum selection clause when that was going to be preempted by federal statute anyway. My client is in Nevada. It has no motivation to litigate up here. It could litigate down there just as easily. The determination we made is that there's only one court in the world that had jurisdiction to hear it, and that was the bankruptcy court or the district court in the Western District of Washington. If there's no questions, I would conclude. Thank you. Thank you. The forum selection clause argument is contained in the appellant's brief authority aside in footnote XII, and that's embellished upon the reply brief. So it's clearly in there. It clearly was briefed. It clearly was raised before in terms of being raised in the bankruptcy court and in the district court. In terms of do you think that overrides the exclusive jurisdiction of the bankruptcy court? I don't know that it necessarily overrides it, Your Honor, but in this situation, again, exclusive jurisdiction of the bankruptcy court over property estate was eroded. Property estate concept was replaced with a trust. That trust provided for distributions to my client and distributions to creditors. Distributions to creditors would be handled with $4 million. You've got $8.3 million that they're admitting should be distributed, and you go out about I haven't added it all up in a while. Are you going back to the argument that the jurisdiction had been lost at some point? I thought your selection clause must have had some impact earlier to help you. I think they're bound by it, Your Honor. Exclusive jurisdiction. Initially, yes. All right. It keeps it. And the forum clause doesn't kick in unless they lose it. They have lost it, Your Honor. You have a confirmed claim. All right. Well, that's your argument. I understand. That is my argument. Okay. And I think in terms of dealing with what happened here, you need to look at, as the Boston original case that we cited states, related jurisdiction is a protean concept. You have to evaluate it throughout the case to figure out in the post-confirmation period what you're dealing with and what jurisdiction the court can exercise. Now you have it, now you don't. Pardon me? Now you have it, now you don't. That's correct. A vanishing jurisdiction. That's correct, Your Honor. I think in this case it's a good example of it. The trustee had no interest with regard to any of those accounting or legal issues. The bottom line You've made the argument. You've made it again and again. I have, Your Honor. All right. It's been heard. Thank you, Your Honor. You may not have won the day. Pardon me? You may not have convinced anybody, but you've made it. I have made it, Your Honor. Thank you for the compliment. Thank you. All right. Matter submitted. We'll go to the last matter. General Auto Parts v. Genuine Parts Company.
judges: Pregerson, Canby, Noonan